MARTIN MAGAZINER and PHYLLIS MAGAZINER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magaziner v. Commissioner
Docket No. 9368-76.
United States Tax Court
T.C. Memo 1978-205; 1978 Tax Ct. Memo LEXIS 310; 37 T.C.M. (CCH) 873; T.C.M. (RIA) 780205; June 5, 1978, Filed *310 Petitioner and Feldman formed a partnership to construct an apartment complex. Feldman was to supervise the construction and was not required to make any capital contribution unless the costs of construction exceeded $795,000. Petitioner initially contributed $60,000. In year subsequent to the organization of the venture both partners made varying capital contributions to the project. Pursuant to the partnership agreement all income, expenses, credits and distributions were to be allocated equally between Feldman and petitioner. However the agreement specially allocated to petitioner interest and depreciation deductions for years 1 through 7 of the venture: 100 percent, 100 percent, 90 percent, 80 percent, 70 percent, 60 percent, 50 percent, respectively. The partnership property was sold at a gain in year 6 and petitioner received more than 50 percent of the proceeds while the taxable gain on the sale was equally divided. Held, the special allocation has no substantial economic effect and, accordingly, will not be recognized. Sec. 704(b)(2), I.R.C. 1954 is applicable. Norman Rabineau, for the petitioners. Robert E. Dallman, for the respondent. STERRETT
MEMORANDUM FINDINGS *311 OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the calendar years 1970 and 1971 in the amounts of $9,615.32 and $8,755.59, respectively. The sole issue for decision is whether, under section 704(b)(2), I.R.C. 1954, [1] the principal purpose of the allocation of specific percentages of the amounts of interest and depreciation deductions in a partnership agreement, with respect to petitioners' distributive share of such items, was for the avoidance or evasion of income taxes. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Martin Magaziner and Phyllis Magaziner, husband and wife, resided in Silver Spring, Maryland at the time the petition herein was filed. They filed joint Federal income tax returns for the years 1970 and 1971 with the district director, internal revenue service, Baltimore, Maryland. Phyllis Magaziner is a party to these *312 proceedings only because she joined in the filing of the returns in issue and, accordingly, Martin Magaziner will hereinafter be referred to as petitioner. In 1969 Edwin Feldman, a builder in the Washington, D.C. area, determined that he needed an additional $60,000, over and above his $42,000 of "seed money" and bank construction loan commitments, for a proposed apartment complex. He could not easily raise the money and, therefore, wanted a partner to contribute the needed $60,000. Petitioner did not know Feldman prior to becoming aware of this real estate deal and, if petitioner had not invested, Feldman would have attempted to find someone else. Petitioner, a dentist, invested in the venture hoping to make an auspicious real estate investment and to reap the benefit of the favorable tax ramifications attributable thereto. On October 15, 1969 petitioner and Feldman executed a partnership agreement creating two partnerships, Joint Venture 1 (J1) and Joint Venture 2 (J2). The partners in each joint venture were Feldman and petitioner. Joint Venture 2 was created to construct and own an apartment complex in Dumphries, Virginia. The 70 unit garden apartment complex consisted of *313 five buildings each with three floors. Feldman was to supervise the construction of the 70 units without compensation and he was not required to make any capital contribution to the venture. However if the total cost of construction, inclusive of land costs, exceeded $795,000, Feldman was personally liable for any excess. Moreover the apartment complex was to be built on land sold by Feldman to J2 for an amount equal to its fair market value less outstanding liabilities thereon. The sole consideration received by Feldman for the sale was J2's non-recourse note. Petitioner's capital contribution to J2 was $60,000. The $60,000 was not "earmarked" to pay any specific partnership liabilities but was used, generally, to pay J2's construction costs. A portion of petitioner's capital contribution was used to repay Feldman's bank loan, the proceeds of which had been used as "seed money" for the apartment complex. While not required the partnership tax return indicates that Feldman, as well as petitioner made varying capital contributions to J2 in years subsequent to 1969. Pursuant to schedule C of the partnership agreement, petitioner's distributive share of J2's interest and depreciation *314 deductions was as follows: [2]
Percent of all
interest & depreciation
1st Calendar year (1969)
100
2nd Calendar year (1970)
100
3rd Calendar year (1971)
90
4th Calendar year (1972)
80
5th Calendar year (1973)
70
6th Calendar year (1974)
60
7th Calendar year (1975)
50 In addition the partnership agreement provided that any other expenses, income, credits and all distributions were to be allocated equally between Feldman and petitioner. Furthermore, petitioner and Feldman shared equal responsibility for all of J2's liabilities with the exception, as previously stated, that Feldman was to assume sole responsibility for any J2 construction liability in excess of $795,000. The apartment complex was sold on December 14, 1974 for a gross sales price of $930,000. It appears from this far from perfect record that the partners, who had been having their difficulties with each other, agreed to a distribution of the sales proceed in a manner which would guarantee petitioner $172,000. Thus, when the net sales proceed payable to J2 amounted to $306,574, one-half being $153,287, it was agreed that petitioner *315 was entitled to a minimum portion of the net proceeds from the sale of the land in the amount of $18,713, thereby giving petitioner $172,000. OPINION Section 704(a)[3] provides that a partner's share of any item of income, gain, loss, deduction or credit shall be determined by the partnership agreement. However 704(b)(2) [4] *316 limits this general rule, and disregards a special allocation of an item by the partnership agreement, if its principal purpose is the avoidance or evasion of Federal income tax. A special allocation provision in the partnership agreement must be considered in relation to all the surrounding facts and circumstances when determining whether the provision's principal purpose is for the avoidance or evasion of income tax. Orrisch v. Commissioner,55 T.C. 395, 401 (1970), affd. per curiam, an unreported case (9th Cir. 1973, 31 AFTR 2d 73-1069). In this respect section 1.704-1(b)(2), Income Tax Regs., lists several relevant criteria as follows: Whether the partnership or a partner individually has a business purpose for the allocation; whether the allocation has "substantial economic effect", that is, whether the allocation may actually affect the dollar amount of the partners' shares of the total partnership income or loss independently of tax consequences; whether related items of income, gain loss, deduction, or credit from the same source are subject to the same allocation; whether the allocation was made without recognition of normal business factors and only after the amount of the specially allocated item could reasonable be estimated; the duration of the allocation; and the overall tax consequences *317 of the allocation. * * * In short, a special allocation will be given effect only if it has business validity apart from its tax consequences Orrisch v. Commissioner,supra55 T.C. at 401; and the presence or absence of substantial economic effect of the allocation is of critical significance in determining whether the principal purpose was the avoidance or evasion of income tax. Harris v. Commissioner,61 T.C. 770, 786 (1974); McKee, Nelson and Whitmire, Federal Taxation of Partnerships and Partners, vol. 1 sec. 10.02[1], p. 10-11 (1977); S. Rept. No. 1622 to accompany H.R. 8300 (Pub. L. No. 591), 83rd Cong., 2nd Sess., p. 379 (1954). Thus, to be recognized, the allocation must actually affect the dollar amount of the partners' shares of total partnership income or loss independently of tax consequences. Section 1.704-1(b)(2), Income Tax Regs.
In other words, the partner who benefits from a special allocation of tax deductions must bear the entire economic cost (burden) of such deductions. Accordingly, if the allocation of an item of income or deduction to a partner is reflected in his capital account and the liquidation proceeds of the entity are distributed in accordance with *318 the capital accounts, the allocation has substantial economic effect. Additionally, if property that has been the subject of a special allocation deduction is sold at a gain and the partnership agreement provides for a gain charge back provision, [5] to find whether there is any economic effect of the special allocation aside from its tax consequences, "we must * * * look to see who is to bear the economic burden of the * * *" deductions if the partnership property is sold for a sum less than its original cost and the partnership liquidated." Orrisch v. Commissioner,supra55 T.C. at 403. In applying the above concept to the facts herein, we note that, although petitioner was represented by counsel, he did not favor us with a brief. [6] Our only indication of petitioner's contentions herein is contained in the stipulation of facts wherein he "alleges" that the special allocation was agreed upon by Feldman and he for the following reason: At the time the petitioner agreed to become a partner with Mr. Feldman, *319 Mr. Feldman had already expended a great deal of time in working on the project, had expended approximately $42,000.00 in "seed" money, and had received a commitment letter for a combined construction and permanent loan that was about to expire. Based on the above, plus the fact that (subject to the cost overrun [construction costs in excess of $795,000] * * *) Mr. Feldman would not have to contribute any money to Joint Venture No. 2, Mr. Feldman agreed to permit * * * [special allocation] of the interest and depreciation deductions * * * to * * * petitioner and his wife. Assuming, arguendo, the above, we recognize that a normal business procedure is that the parties who provide *320 capital frequently insist that initial partnership losses be allocated to them. However, it is also customary that the partnership agreement provide that the same partners shall be charged with all partnership profits until they have recouped the losses previously charged to them. In the instant case the property was sold at a gain and the partnership liquidated. The partnership agreement did not provide for any gain charge back. Instead petitioner received more than 50 percent of the net proceeds upon sale of the realty and the taxable gain was equally divided between Feldman and petitioner. While the record does not permit us to find with any certainty the precise amount of each partner's capital account, it is clear that petitioner's capital account, prior to the sale of the realty, had to be considerably less than Feldman's by reason of having had the disproportionate benefit of interest and depreciation deductions. In sum, it is clear that the special allocations had, absolutely, no substantial economic effect. Moreover, as we stated in Orrisch v. Commissioner,supra55 T.C. at 402 n. 5, "we do not think that sec. 704(a) permits the partners' prospective tax benefits to be *321 used as the medium for equalizing their investments, and it is apparent that the economic burden of depreciation (which is reflected by the allowance for depreciation) was not intended to be the medium used." In view of the foregoing, Decision will be entered for the Respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect during the taxable years in issue, unless otherwise noted.↩
2. The schedule was agreed to, orally, in October, 1969 and confirmed, in writing, in March or April of 1971.↩
3. SEC. 704. PARTNER'S DISTRIBUTIVE SHARE (a) Effect of Partnership Agreement.--A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this chapter, be determined by the partnership agreement. ↩
4. (b) Distributive Share Determined by Income or Loss Ratio.--A partner's distributive share of any item of income, gain, loss, deduction, or credit shall be determined in accordance with his distributive share of taxable income or loss of the partnership, as described in section 702(a)(9), for the taxable year, if-- * * *
(2) the principal purpose of any provision in the partnership agreement with respect to the partner's distributive share of such item is the avoidance or evasion of any tax imposed by this subtitle.↩
5. E.g.: The partnership agreement might provide that the same partners shall be charged with all partnership profits until they have recouped the losses previously charged to them.↩
6. While not detrimental, per se, we note, in particular, internal inconsistencies in the stipulation of facts as well as several inconsistencies and "missing links" in the exhibits placed in evidence. Possibly petitioner's briefing may have alleviated and/or explained some if not all of these problem areas. In sum, as discussed infra, while we sympathize with the taxpayer's plight the record is simply insufficient to find that petitioner has carried his burden to show that sec. 704(b)(2)↩ is inapplicable herein.